**SPARTAN FOOD SYSTEMS, INC.,**
**Plaintiff-Appellant,**

v.

**HFS CORPORATION,**
**Defendant-Appellee.**

**No. 86–2092.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1987.

Decided March 13, 1987.

Barry Eastburn Bretschneider (Douglas P. Mueller, Gerald L. Lett, Wegner & Bretschneider, Washington, D.C., Louis P. Howell, Spartanburg, S.C., Spartan Food Systems, Inc., on brief), for plaintiff-appellant.

John Sidney Hale (Gipple & Hale, David McC. Eastbrook, Washington, D.C., Creeger & Creeger, on brief), for defendant-appellee.

Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and SIMONS, Senior District Judge for the District of South Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

Spartan Food Systems appeals from the district court's judgment dismissing its complaint against H.F.S. Corporation and from the district court's injunction restraining Spartan from using its federally registered service mark, QUINCY'S, for restaurant services throughout Virginia. Because H.F.S. is not entitled to bar Spartan from using its mark in all areas of the state, we reverse dismissal of the complaint, dissolve the injunction, and remand the case for further proceedings.

Spartan, a Delaware corporation whose principal place of business is in Spartanburg, South Carolina, has continuously used the service mark, QUINCY'S, in connection with restaurant services in interstate commerce since 1976. Spartan operates 219 QUINCY'S restaurants in the states of North Carolina, South Carolina, Florida, Georgia, Alabama, Tennessee, and since about November 1985, Newport News, Hampton, and Martinsville, Virginia. Spartan advertises its QUINCY'S restaurants through newspapers, signs, and radio. On August 21, 1984, Spartan registered its service mark with the United States Patent and Trademark office, based on its date of first use in interstate commerce of September 1, 1976.

Also using the QUINCY'S service mark is H.F.S., a Virginia corporation with its principal place of business in Arlington, Virginia. H.F.S. has operated two restaurants in Arlington and McLean, northern Virginia suburbs of Washington, D.C., since September 1979. H.F.S. advertises those restaurants through newspapers, including the Washington Post, and through signs and radio. H.F.S. obtained a Virginia registration on March 9, 1982, for its mark. Before Spartan opened its Virginia restaurants it knew that H.F.S. used the QUINCY'S mark in the northern part of the state.

Spartan sought a declaratory judgment of its rights as a federal registrant under the Lanham Act to use the QUINCY'S mark in its Virginia restaurants and in other parts of the state except Arlington and McLean. H.F.S. counterclaimed for service mark infringement in violation of common law, the Virginia Trademark and Service Mark Act, Va.Code § 59.1–77—92, and § 43(a) of the Lanham Act. H.F.S. asserts entitlement to exclusive use of the QUINCY'S mark throughout Virginia.

The district court held that because Spartan's federal registration was not incontestable, H.F.S. could assert its state registration as a defense to Spartan's claim that the Lanham Act afforded it the right to use its mark in all areas of the state except northern Virginia. The court construed Virginia's trademark statute and common law as giving H.F.S. statewide right to the QUINCY'S mark and enjoined Spartan from using its federally registered mark anywhere in Virginia.

## I

Spartan's registration has not been in effect five years, so its right to use the mark is not incontestable. Consequently, § 33(a) of the Lanham Act, 15 U.S.C. § 1115(a) is applicable. This section provides:

(a) Any registration ... of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration

subject to any conditions or limitations stated therein, but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

■ Section 33(a) enables H.F.S. to rebut Spartan's prima facie evidence of exclusive right to use the mark, QUINCY'S. Section 43(a) of the Act, 15 U.S.C. § 1125(a) enables H.F.S. to seek injunctive relief against Spartan's use of the mark. H.F.S. has offered no proof that Spartan's registration is invalid or defective. Therefore, the scope of its defense under § 33(a) and the geographical extent of the injunction it seeks under § 43(a) are governed by common law as expounded by the Supreme Court. *See Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir.1985); *Minuteman-Press International v. Minute-Men Press*, 219 U.S.P.Q. 428, 431 (N.D.Cal.1983); 2 J. McCarthy, *Trademarks and Unfair Competition*, § 26.18, p. 331 (2d ed. 1984).

■ *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), explain the applicable common law. These cases hold that a junior user, who in good faith adopted a mark for use at a place remote from the place of senior use of a similar mark, has a right to continue its use of the mark superior to the right of the senior user. H.F.S. used the QUINCY'S mark in good faith in northern Virginia, a place remote from Spartan's senior use of the mark. Consequently, H.F.S. can continue to use the QUINCY'S mark on its restaurants in northern Virginia, and Spartan cannot use the mark there. This much Spartan concedes.

## II

■ H.F.S. contends, however, that its use of the QUINCY'S mark is not limited to northern Virginia. It asserts that it has the right of exclusive use of the mark throughout Virginia and that Spartan must be barred from using the mark anywhere

in the state. The following passage from *Hanover Milling*, 240 U.S. at 415–16, forecloses these claims:

That property in a trade-mark is not limited in its enjoyment by territorial bounds, but may be asserted and protected wherever the law affords a remedy for wrongs, is true in a limited sense. Into whatever markets the use of a trade-mark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress. But this is not to say that the proprietor of a trade-mark, good in the markets where it has been employed, can monopolize markets that his trade has never reached and where the mark signifies not his goods but those of another.... "Since it is the trade, and not the mark, that is to be protected, a trade-mark acknowledges no territorial boundaries of municipalities or states or nations, but extends to every market where the trader's goods have become known and identified by his use of the mark. But the mark, of itself, cannot travel to markets where there is no article to wear the badge and no trader to offer the article."

In a concurring opinion, Justice Holmes stated that he thought a trademark established in one part of a state cannot be used by another person in any part of that state. 240 U.S. at 426, 36 S.Ct. at 365. A majority of courts, however, have not accepted the Holmes *dictum*. *See, e.g., Natural Footwear Ltd. v. Hart Schaffner & Marx*, 760 F.2d 1383, 1398 n. 34 (3d Cir.1985); *Food Fair Stores v. Square Deal Market Co.*, 206 F.2d 482, 484–85 (D.C.Cir.1953). *See also* 2 J. McCarthy, *Trademarks and Unfair Competition*, § 26:12, pp. 309–11 (2d ed. 1984). Although *Hanover Milling* and *United Drug* were decided before passage of the Lanham Act, their common law exposition of trademark rights applies today. The common law rights are restricted to the locality where the mark is used and to the area of probable expansion. *See In re Beatrice Foods Co.*, 429 F.2d 466, 472 (CCPA 1970).

Notwithstanding *Hanover Milling* and *United Drug*, H.F.S. asserts that this circuit recognizes statewide rights for trademarks regardless of their limited use. In support of this proposition it cites *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849, 850–51 n. 3 (4th Cir.1979), which states:

> In delineating geographical areas for trademark use, whole States are the usual unit. *Wrist-Rocket [Mfg. Co., Inc. v. Saunders Archery Co.], supra*, 578 F.2d [72] at 732 [8th Cir.1978]; *Hanover Star Milling Co., supra*, 240 U.S. at 416 [36 S.Ct. at 361]. This may be a historical survival of the origin of trademark protection as part of the law of unfair competition. Perhaps individual areas less than statewide might be appropriate under certain circumstances. The sandwich shops in the instant case draw walk-in trade from a small surrounding area. The manufacture of brick is another local industry, where high transportation costs limit penetration of a wide market.

*Armand's* does not hold that in this circuit trademark rights encompass an entire state. The footnote is *dicta*. Moreover, as the court recognized, areas less than statewide may be appropriate for local business, such as sandwich shops or restaurants. The court also acknowledged that the critical factor, even in a single state, is the likelihood of confusion engendered by competing uses of similar marks rather than state lines. 604 F.2d at 850–51.

Apart from its claim to use the mark throughout Virginia on the basis of *Armand's* dicta, H.F.S. asserts that it is entitled to statewide use because of market penetration and potential expansion. In support of this contention it relies on establishment of two restaurants in northern Virginia, its advertising in the Washington Post, which circulates throughout Virginia, and plans to expand to other parts of the state.

Some courts have interpreted the area of use to include a "zone of natural expansion," *Minuteman Press International, Inc. v. Minute-Men Press*, 219 U.S.P.Q. 426, 432 (N.D.Cal.1983), or comparably, the prior claimant's area of "market penetration." *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1398 (3d Cir.1985). Courts that follow the "zone of natural expansion" theory have applied the following five-part test: "the party's (1) previous business activity; (2) previous expansion or lack thereof; (3) dominance of contiguous areas; (4) presently-planned expansion; and, where applicable (5) possible market penetration by means of products brought in from other areas." *See Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 523 (C.C.P.A. 1980). To determine "market penetration," courts have considered four factors: "(1) the volume of sales of the trademarked product; (2) the growth trends ... in the area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." *Natural Footwear*, 760 F.2d at 1398–99.

Under neither theory has H.F.S. established a claim to any area beyond northern Virginia. The "zone of natural expansion" gives H.F.S. no additional rights, for under the *Weiner King* test, H.F.S.'s previous business activity has involved only its two restaurants, with no expansion and nothing to suggest it dominates contiguous areas. Evidence of H.F.S.'s plans to expand outside northern Virginia is limited to a 1981–82 demographic study of Richmond, which H.F.S. did not keep. H.F.S. has no concrete plans for expansion throughout the state. Nor does H.F.S. fare better under the "market penetration" test of *Natural Footwear*. H.F.S. argues that it advertises widely in Virginia but presents evidence only that the Washington Post circulates throughout Virginia. Advertising alone cannot establish common law rights. *Wrist-Rocket Manufacturing Co., Inc. v. Saunders Archery Company*, 578 F.2d 727, 732 (8th Cir.1978). Moreover, the evidence shows that the Washington Post's Virginia circulation is primarily confined to suburbs in the metropolitan Washington, D.C., area. But even if H.F.S. had demonstrated significant advertising throughout Virginia, this would not show the effect of such advertis-

ing. H.F.S. presented no evidence that its advertising brought customers from throughout Virginia to its restaurants.

▋ The basic test for trademark infringement under common law and the Lanham Act is the likelihood of confusion. *See* 2 J. McCarthy, *Trademarks and Unfair Competition,* § 23:1 (2d ed. 1984). The district court found no evidence of actual confusion or the likelihood of confusion between Spartan's restaurants in southern Virginia and H.F.S.'s restaurants in the northern Virginia suburbs of the Washington, D.C., metropolitan area. We do not infer confusion from the mere co-existence of both service marks in the state of Virginia. The market areas of Spartan and H.F.S. are distinct and geographically separate.

In sum, common law limits H.F.S.'s defense under § 33(a) of the Lanham Act to the area of its prior use in northern Virginia. Common law also limits the injunctive relief under § 43(a) to exclude Spartan's use of the mark only in northern Virginia. *Hanover Milling,* 240 U.S. at 415–16, 36 S.Ct. at 361, and *United Drug,* 248 U.S. at 100–02, 39 S.Ct. at 51–52, set forth the principles of common law that govern this aspect of the case.

## III

H.F.S. also contends that Virginia common law and the Virginia Trademark and Service Mark Act give it the exclusive right to use the mark, QUINCY'S, throughout the state despite Spartan's federal registration.

▋ Even if we were to assume that state law confers rights as broad as H.F.S. proposes, H.F.S. cannot prevail. The difficulty with H.F.S.'s reliance on state law is the Lanham Act's limited preemption of state law. Federal registration fulfills the express purpose of Congress in regulating commerce within its control, "to protect registered marks used in such commerce from interference by State, or territorial legislation ..." § 45 Lanham Act, 15 U.S.C. § 1127. If a conflict arises between federal and state law, including state regis-

tration statutes, the Lanham Act effects a limited preemption of state law, resolving the conflict in favor of the federal registrant's rights. *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904, 907–08 (7th Cir.1968); *Minuteman Press International, Inc. v. Minute-Men Press,* 219 U.S.P.Q. 426, 432 (N.D.Cal.1983)

▋ It is undisputed that Spartan's mark is used in interstate commerce. Therefore, even though Spartan's registration is not incontestable, § 22 of the Lanham Act, 15 U.S.C. § 1072, provides constructive notice of Spartan's claim of ownership. *See* 4A Callman, *Unfair Competition, Trademarks, and Monopolies,* § 25.05, p. 21 (4th ed. 1983). Section 22 thus affords nationwide protection to registered marks. *See Dawn Donut Company v. Hart's Food Stores, Inc.,* 267 F.2d 358, 362 (2d Cir. 1959). But because Spartan's mark is not incontestable, the nationwide protection afforded by § 22 is circumscribed by § 33(a) of the Act under which H.F.S. proved its exclusive right to use the mark in northern Virginia, as explained in Part I of this opinion.

▋ H.F.S.'s reliance on state law to assert exclusive use of the mark throughout Virginia directly conflicts with §§ 22 and 33(a) of the Lanham Act that enable Spartan to use its registered marks in areas of Virginia where H.F.S. did not use the mark prior to Spartan's federal registration. The express terms of § 45 of the Act which provide for its preemption of state law require that the conflict between Spartan's federal protection and H.F.S.'s state law claims must be resolved in favor of Spartan.

## IV

As an additional ground for reversal, Spartan urges us to hold that neither Virginia common law nor the Virginia Trademark statute affords statewide rights to a state registrant who, like H.F.S., has used its mark in only a limited area of the state.

Decision of this issue is unnecessary. The Lanham Act does not preempt all state law pertaining to trademarks. The right of

a state registrant to bar intrastate use of a mark that is not federally registered may be broader than Spartan insists. But this is an issue we should not decide without benefit of the Virginia Supreme Court's explanation of the geographical extent of rights afforded by state law. *See Minuteman Press International, Inc. v. Minute-Men Press, Inc.,* 219 U.S.P.Q. 426, 433 (N.D.Cal.1983).

### V

The judgment dismissing Spartan's complaint is reversed. The injunction restraining Spartan from using its mark throughout Virginia is dissolved. The case is remanded, and the district court is directed to delineate the area of northern Virginia where H.F.S., as a junior user prior to the date of Spartan's federal registration, is entitled to exclude Spartan's use of its mark. Spartan shall recover its costs.