EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Arribas & Associates, Inc.<br><br>      Peticionaria<br><br>           v.<br><br> American Home Products Corp.<br><br>      Recurrido | Certiorari<br><br>2005 TSPR 128<br><br>165 DPR _____ |

Número del Caso: CC-2003-939

Fecha: 14 de septiembre de 2005

Tribunal de Apelaciones:

        Circuito Regional I de San Juan

Juez Ponente:

        Hon. Carlos Rodríguez Muñiz

Abogados de la Parte Peticionario:

        Lcda. Wilma I. Cadilla Vázquez
        Lcdo. Jorge R. Quintana Lajara

Abogados de la Parte Recurrida:

        Lcdo. Alejandro J. Cacho
        Lcdo. Federico Calaf Legrand


Materia: Revisión Administrativa Procedente del Departamento de
        Asuntos del Consumidor

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Arribas & Associates, Inc.

    Peticionaria

      v.                CC-2003-939      Certiorari

American Home Products Corp.

    Recurrido

Opinión del Tribunal emitida por el JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 14 de septiembre de 2005.

El presente recurso nos permite determinar quién tiene mejor derecho sobre una marca: una compañía que la registró primero en el Registro de Marcas del Departamento de Estado del Estado Libre Asociado pero que no la ha usado, o un titular registral federal posterior, que fue quien antes la utilizó en el comercio en Estados Unidos y en Puerto Rico.

I.

En febrero de 1997, la recurrida American Home Products (en adelante AHP) solicitó a la Oficina de Patentes y Marcas de Estados Unidos la inscripción de la marca Sonata. Dicha solicitud se hizo con la

intención bona fide de usar la marca en productos farmacéuticos para el insomnio.

Tras comenzar a usar Sonata en el comercio interestatal de Estados Unidos en febrero de 1998, AHP obtuvo el registro de la marca en junio de ese mismo año.

De otra parte, en mayo de 1998, Arribas & Associates, Inc. (en adelante Arribas) solicitó al Departamento de Estado de Puerto Rico que registrara a su favor la marca "Sonata Sleeping Aid Medicine". La solicitud del registro se hizo sin haber usado la marca previamente en el comercio, pero con la intención de usarla para un producto farmacéutico para el insomnio. Tras ciertos trámites, el Departamento de Estado finalmente registró la marca Sonata a favor de Arribas mediante el registro núm. 43,034.

En agosto de 1999, AHP expandió su uso de la marca a Puerto Rico. En esa fecha comenzó a venderle el producto Sonata a diversas farmacias del país.

Así las cosas, en marzo del 2000, AHP presentó al Departamento de Estado una petición de cancelación del registro núm. 43,034, el registro de la marca Sonata a favor de Arribas. En su petición, AHP señaló que había registrado la misma marca, para el mismo tipo de producto, en el registro federal de la Oficina de Patentes y Marcas. Adujo, además, que había usado la marca mucho antes que Arribas y que había invertido considerables sumas de dinero en la publicidad y

promoción del producto. Expuso que de permitirse la coexistencia de ambas marcas, los consumidores se confundirían y podrían adquirir el producto que en su día mercadeara Arribas como si fuera el de AHP. Un tiempo después, AHP también solicitó al Departamento de Estado que registrara la marca Sonata a su favor.

Luego de ciertos trámites procesales, el Departamento de Estado celebró una vista para dilucidar el asunto de la cancelación. En esa vista AHP aportó prueba documental y testifical. Arribas presentó una estipulación de las partes sobre la existencia del registro núm. 43,034 en el Departamento de Estado, registro objeto de cancelación.

Como resultado de esa vista, la agencia determinó que no había evidencia de uso alguno de la marca por parte de Arribas, que AHP había usado la marca en Estados Unidos previo al registro por parte de Arribas e, incluso, que luego de éste, AHP había sido el primer usuario de la marca en Puerto Rico. Concluyó que el derecho propietario sobre una marca en Puerto Rico se obtiene por el uso y no por el registro. Añadió que existía una probabilidad de confusión entre la marca registrada por Arribas y la de AHP. Por lo tanto, declaró con lugar la petición de cancelación del registro núm. 43,034 a favor de Arribas y ordenó la continuación del procedimiento administrativo para la inscripción de la marca Sonata a favor de AHP.

De esa resolución acudió Arribas al Tribunal de Apelaciones, que confirmó la determinación administrativa. Dicho foro fundamentó su decisión en un análisis de la probabilidad de confusión entre las marcas.

Inconforme aún, Arribas acude ante nos. Señala que erró el Tribunal de Apelaciones al enfocarse sobre la probabilidad de confusión [1] y que la verdadera controversia estriba en quién tiene mejor derecho sobre la marca Sonata en Puerto Rico. Expedido el auto y con el beneficio de la comparecencia de las partes, resolvemos.

## II.

### A.

En Puerto Rico la protección del derecho de marcas se encuentra consagrada en la Ley de Marcas del Estado Libre Asociado de Puerto Rico, Ley Núm. 63 de 14 de agosto de 1991, 10 LPRA sec. 171 *et seq.* (en adelante Ley de Marcas). Conforme a esta ley, una marca es "todo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, de productos o servicios de otra persona", 10 LPRA sec. 171.

En cuanto a la adquisición del derecho propietario sobre una marca, la Ley de Marcas dispone:

---

[1] Arribas incluso expresa que ambas marcas son idénticas y van dirigidas al mismo tipo de producto y que "las partes no han argumentado en contra de la probabilidad de confusión entre sus marcas". Certiorari, pág. 8.

Artículo 3 –Derecho a la marca.—

A. El derecho de propiedad sobre la marca se adquiere por el registro válidamente efectuado de conformidad con las disposiciones de la presente Ley.

B. Sin embargo, el usuario anterior de una marca podrá reclamar al Secretario la cancelación de una marca registrada que pueda crear confusión con la suya siempre que ejercite la reclamación antes de que transcurran cinco (5) años desde el registro de la marca. 10 LPRA sec. 171a.

Mediante esta sección se reconoce la existencia de un derecho propietario sobre la marca a raíz de la inscripción de ésta en el Registro de Marcas del Departamento de Estado. No obstante, ese derecho está condicionado a que el registro se efectúe válidamente **y**, además, sucumbirá ante la reclamación oportuna por parte de quien tiene mejor derecho sobre la marca por haberla usado con anterioridad. Nuestra Ley de Marcas, por lo tanto, combina "el derecho nacido por el uso con el derecho constituido con el registro". Informe Conjunto de las Comisiones de Cooperativismo, Comercio y Fomento Industrial y de lo Jurídico sobre el P. del S. 995, de 19 de junio de 1991.

Así como la Ley de Marcas permite que se adquiera una marca por su inscripción –sujeto a las condiciones ya señaladas–, también admite que se registren marcas que no se hayan usado previo a la presentación de la solicitud. A esos efectos, en el Art. 4 de la Ley de Marcas de

Puerto Rico, en que se exponen los requisitos para registrar una marca, se incluye:

> C. Facsímiles de la marca, tal como se usa o **se usará** en el comercio en la forma y cantidad que mediante reglamentación disponga el Secretario. 10 LPRA sec. 171b.

Además del texto mismo del artículo, del historial legislativo se desprende que la intención legislativa era permitir el registro de una marca que aún no se ha utilizado en el comercio:

> Otra de las áreas atendidas por la nueva Ley es la protección de marcas no usadas en el mercado. Esto permite el registro de una marca por una persona antes de usarla. Este beneficio protege la marca de apropiación por competidores desleales en la delicada etapa de desarrollo de un producto o servicio para lanzarlo al mercado. Informe Conjunto, *supra*.

Ahora bien, al registrarse una marca con o sin uso previo, el proponente debe cumplir con varios requisitos. El citado Art. 4 de la Ley de Marcas de Puerto Rico, 10 LPRA sec. 171b, incluye los requisitos formales para solicitar el registro. El Art. 5, 10 LPRA sec. 171c, de otra parte, enumera una serie de prohibiciones que afectan la posibilidad de registrar una marca. Conforme a dicha sección, no se puede registrar, entre otras: una marca que sea idéntica a otra marca ya inscrita o conocida, que pertenezca a otro y que se use en productos o servicios de las mismas propiedades descriptivas o que tanto se asemeje a la marca del otro que sea muy probable que ocasione confusión o equivocación en la mente del

público o dé lugar a engaño de los compradores, 10 LPRA sec. 171c(a)(7).

Ese impedimento implica una protección a los consumidores, por cuanto el enfoque de la sección es evitar que el público se confunda en cuanto al origen del producto que identifica la marca. *Véanse*, Garriga Trad. Co. v. Century Pack Corp., 107 DPR 519, 524-526 (1978), Beléndez Solá, Inc. v. Rivera, 102 DPR 276, 278 (1974) (ambos interpretando disposición análoga en la Ley de Marcas de 1923). Ello conlleva una protección a los usuarios originales de una marca, aunque no la hayan registrado, ya que se impide el registro de una marca similar a la ya utilizada y que pueda ocasionar confusión. Al leer este artículo en conjunto con el que otorga un derecho propietario a quien registre válidamente, Art. 2 de la Ley de Marcas de Puerto Rico, *supra*, queda claro que ese derecho propietario sólo será posible si no hay un usuario previo de esa misma marca. En caso de haber un usuario previo, éste tendrá mejor derecho sobre la marca. Incluso, su mera presencia debe imposibilitar el registro de la marca a nombre de otro, siempre que exista una probabilidad de confusión.

Luego de finalizados los trámites que prescribe la ley, *véanse* 10 LPRA sec. 171b a 171f, e inscrita ya la marca, su titular tendrá a su disposición varios mecanismos de protección. Así, el titular registral de una marca puede interponer una acción en daños,

interdicto u orden de incautación contra cualquier persona que, sin su consentimiento, utilice o intente utilizar la marca en el comercio de Puerto Rico, 10 LPRA sec. 171w. Además puede obtener órdenes provisionales ex parte ordenando el cese del uso de la marca hasta que se ventile el caso y órdenes ex parte, y sin previo pago de fianza, para el embargo preventivo e incautación de los artículos a los que el infractor hubiese adherido la marca, 10 LPRA sec. 171x.

No obstante, aún cuando se ha efectuado ya el registro de una marca, éste puede resultar objeto de una solicitud de cancelación. A esos efectos, el Art. 19 de la Ley de Marcas de Puerto Rico, 10 LPRA sec. 171q, establece que una persona que se considere perjudicada por el registro de una marca podrá solicitar su cancelación presentando un escrito al Secretario. Si al momento de presentar la solicitud ya han transcurrido más de cinco (5) años desde el registro de la marca, la cancelación sólo procederá si está presente uno de los fundamentos esbozados en el Art. 19, *supra*, a saber: (1) abandono de la marca, (2) un registro realizado en contravención a las disposiciones de la ley, (3) advenimiento de la marca en el nombre genérico del producto o servicio para el cual se usa, (4) uso del registro por o con permiso del titular registral de forma que causa confusión sobre la naturaleza, calidad, características o procedencia geográfica del producto o

servicio para el cual se usa y (5) un registro obtenido mediante dolo.

Distinto es el caso cuando la solicitud de cancelación se presenta dentro del término de cinco (5) años desde el registro de la marca. En ese caso no se limitan las razones por las que procede la cancelación, siendo entonces posible que se cancele una marca por las razones enumeradas arriba o por cualquier otra que indique que el titular registral de una marca no tiene derecho a ésta.

Buena parte de las secciones reseñadas de la Ley de Marcas constituye una innovación en el ámbito jurídico puertorriqueño. Nuestra anterior ley de marcas, la Ley núm. 66 de 28 de julio de 1923, que fue derogada al aprobarse la actual Ley de Marcas, no definía el concepto de la marca, ni disponía cómo éstas se adquirían. De ahí que en Colgate-Palmolive v. Mistolín, 117 DPR 313, 321 (1980), nos viéramos precisados a proveer una definición. En ese mismo caso, y utilizando la jurisprudencia norteamericana sobre el derecho de marcas como altamente persuasiva, también dispusimos que el derecho propietario sobre una marca se adquiría por su uso. *Id*, a la pág. 324. Reiteramos dicha conclusión en Posadas de P.R. v. Sands Hotel, 131 DPR 21, 35 (1992), caso en que también se analizaba una controversia surgida mientras estaba vigente la Ley de Marcas de 1923. Nuestras expresiones en esos casos, por lo tanto, deben enmarcarse en el

contexto de la anterior ley de marcas, y en la medida que son incompatibles con las disposiciones de la nueva Ley de Marcas, no deben aplicarse a ésta.

B.

En la esfera federal, el derecho de marcas se encuentra cobijado por la Ley Lanham, 15 U.S.C.A. sec. 1051 *et seq*. Mediante dicha legislación, el Congreso proveyó un esquema detallado para el registro de una marca que se ha utilizado en el comercio interestatal o en el comercio entre Estados Unidos y otra nación.[2]

Al aprobar la Ley Lanham, el Congreso quiso proteger a los negocios en expansión. John R. Thompson Co. v. Holloway, 366 F. 2d 108, 114-115 (Cir. 5, 1966). A esos efectos, la ley provee a las marcas protección en todo Estados Unidos, incluyendo a Puerto Rico. *Véanse*, 15 U.S.C.A. §1127 y 3 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §22:11 (4th Ed.). El fin de esa amplia protección es fomentar la competencia y

---

[2] Según definida por la Ley Lanham, la palabra comercio se refiere al comercio que puede ser regulado por el Congreso de los Estados Unidos. 15 U.S.C.A. sec. 1127. Por tanto, se trata del comercio entre los estados, con naciones extranjeras y con tribus indias, que es el comercio que la Constitución de Estados Unidos le permite reglamentar. *Véase*, Constitución de los E.U.A., Art. I, Sección 8, cláusula 3, recogida en 1 LPRA.

El uso en el comercio de las marcas al que se refiere la Ley Lanham significa una venta o la transportación de un producto en el comercio interestatal estadounidense o en el comercio de este país con naciones extranjeras. 3 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19:117 (4th Ed.).

asegurar a un productor que podrá derivar los frutos de su buena reputación, para de ese modo estimular el control de calidad. *Véase*, Park 'N Fly, Inc. v. Dollar Park And Fly, Inc., 469 U.S. 189, 198 (1985).

Para viabilizar ese propósito, se facultó a la Oficina de Patentes y Marcas a registrar marcas de fábrica, [3] de servicio, colectivas y de certificación. *Véase*, 15 U.S.C.A. § 1127. Ahora bien, el registrar una marca no hace al solicitante dueño de ésta; la propiedad sobre ella se adquiere por el uso y no por el registro. Geoffrey, Inc. v. Toys 'R Us (Nosotros Somos Los Juguetes), Inc., 756 F. Supp. 661, 665 (D. Puerto Rico, 1991), 2 McCarthy, *supra*, § 16:18. No obstante, el registro federal de una marca constituye evidencia prima facie que dicho registro es válido, que la marca pertenece al registrante federal y que éste tiene derecho al uso exclusivo de la misma, 15 U.S.C.A. § 1115(a). [4]

---

[3] Una marca de fábrica se refiere a cualquier palabra, nombre, símbolo o artefacto o cualquier combinación de ellos que: (1) identifique y distinga el bien de una persona, incluyendo un producto único, de los manufacturados o vendidos por otras personas y (2) para indicar la fuente de los bienes, aun cuando dicha fuente sea desconocida. Para cumplir con la definición provista por la Ley Lanham, además de lo anterior, la marca debe ser utilizada por una persona o ser objeto de una solicitud de inscripción en el registro principal basada en la intención bona fide de uso de la marca. 15 U.S.C.A. § 1127. Las definiciones de los otros tipos de marcas se encuentran en esa misma sección.

[4] Luego que el derecho a usar la marca registrada se ha tornado inatacable, el registro se convierte en evidencia concluyente que es válido, que la marca

Además, la Ley Lanham confiere otros importantes derechos y beneficios a los que cumplen con sus disposiciones y registran sus marcas federalmente. <u>Brittingham v. Jenkins</u>, 914 F. 2d 447, 452 (Cir. 4, 1990).

Precisamente porque el registro no crea el derecho a la marca y porque éste nace de su uso, para registrar una marca con la Oficina de Patentes y Marcas resulta indispensable que previo al registro el solicitante haya usado la marca en el comercio. *Véanse*, 15 U.S.C.A. § 1051 (a) y (d), 3 McCarthy, *supra*, § 19:1.1. Sin embargo, ello no impide que una persona que aún no ha utilizado la marca en el comercio, pero que tiene la intención bona fide de hacerlo, solicite su registro. 15 U.S.C.A. § 1051 (b). Pero para que el registro de esa marca se efectúe, será necesario que dicho solicitante, dentro del término dispuesto por ley, acredite su uso en el comercio en la forma ordenada. 15 U.S.C.A. § 1051 (d).[5]

Ahora bien, la presentación de una solicitud de registro en la Oficina de Patentes y Marcas confiere al solicitante, sujeto al registro de la marca, el beneficio del "uso constructivo" de ésta a partir de la solicitud.

---

pertenece al registrante federal y que éste tiene derecho al uso exclusivo de la misma. 15 U.S.C.A. § 1115 (b).

[5] Una alternativa a ese proceso es que se enmiende la solicitud de registro para hacer constar que previo a ella la marca sí se había utilizado en el comercio. *Véanse*, 15 U.S.C.A. § 1051 (c) y 3 McCarthy, *supra*, § 19:13.

15 U.S.C.A. § 1057 (c). Así, una vez se registre la marca, se entenderá que su uso comenzó a la fecha en que se presentó la solicitud. Se trata de una ficción de ley que premia al que solicita el registro de una marca que tiene la intención bona fide de utilizar, confiriéndole prioridad de uso desde la fecha de solicitud, no obstante el hecho de que su uso efectivo ocurrió con posterioridad. Ese uso constructivo de la marca se entenderá que ha ocurrido en todos los Estados Unidos. Véanse, Emergency One, Inc. v. American Fire Eagle Engine Co., Inc., 332 F. 3rd 264, 268-69 (Cir. 4, 2003), 4 McCarthy, *supra*, § 26:38. Es decir, la prioridad de uso que confiere la solicitud de registro al amparo de la sec. 1051 (b) de la Ley Lanham cubre la misma extensión que la propia ley.

El beneficio del uso constructivo es de tal magnitud que casi ha eclipsado otro privilegio que confiere la Ley Lanham: el "aviso constructivo". *Id*. Una vez se efectúa el registro de una marca en la Oficina de Patentes y Marcas, cualquier usuario posterior se da por notificado que el registrante reclama ser el dueño de la marca. *Véase*, 15 U.S.C.A. § 1072. El efecto neto de esa disposición es que impide que una persona que pretende usar la marca que otro ha registrado federalmente con anterioridad reclame desconocer su existencia. *Véanse,* 4 McCarthy, *supra*, § 26:31-32, Thompson v. Holloway, *supra*. Ello resulta importante porque una de las defensas que

cobija a quien es acusado de infringir el derecho de un registrante federal sobre una marca es que adoptó la marca sin tener conocimiento del uso previo por parte del titular federal y que la ha estado utilizando ininterrumpidamente con anterioridad a la fecha de uso constructivo de la marca federal. *Véase*, 15 U.S.C.A. § 1115 (b)(5).   Esta defensa, sin embargo, sólo permitirá al infractor mantener su marca en el área en que llevó a cabo su uso previo y continuo. *Véanse*, Spartan Food Systems, Inc. v. HFS Corporation, 813 F.2d 1279 (Cir. 4, 1987), Natural Footwear Limited v. Hart, Shaffner & Marx, 760 f.2d 1383 (Cir. 3, 1985), Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F. 2d 838 (Cir. 9, 1969), Burger King v. Hoots, 403 f.2d 904 (Cir. 7, 1968).

Un último aspecto de la Ley Lanham que para efectos de este caso merece discusión es su relación con la legislación estatal sobre marcas.   La mayor parte de los estados permite algún tipo de registro de las marcas utilizadas dentro de ese estado.   3 McCarthy, *supra*, § 22:1.   La Ley Lanham puede coexistir con las leyes de los diferentes estados.   No obstante, cuando en virtud de una ley estatal se contraviene una disposición de la Ley Lanham, opera una ocupación parcial del campo y se invalida el efecto de la disposición estatal que conflige con los preceptos de la Ley Lanham. *Id*, § 22:2, Spartan v. HFS, *supra*.

                        III.

    AHP y Arribas ambas reclaman ser dueñas de la misma
marca: Sonata.  AHP se ampara en su uso de la marca en el
comercio interestatal y reclama las protecciones que le
confiere la Ley Lanham a quienes registran sus marcas
según lo allí dispuesto.  Arribas, por su parte, se
cobija en las disposiciones de nuestra nueva Ley de
Marcas, que permite apropiarse de una marca a través del
registro y registrar marcas que no se han utilizado y,
además, en el hecho que su fecha de registro aquí en
Puerto Rico es previa a la fecha del registro federal por
parte de AHP.[6]

    Veamos las circunstancias particulares de este caso.
En febrero de 1997, AHP solicitó el registro federal de
la marca Sonata.  En junio de 1998, cuando éste se
concedió, AHP obtuvo no sólo el beneficio del "aviso
constructivo", mediante el cual se dan por notificados
todos los usuarios posteriores del registro federal de
AHP, sino también el beneficio del "uso constructivo",
que implica que para efectos legales, se debe entender

---

[6] Arribas también arguye que el registro federal que
llevara a cabo AHP no puede tener efecto en Puerto Rico
porque las marcas sólo reciben protección en determinada
jurisdicción.  Para ello se ampara en nuestra
jurisprudencia anterior -Colgate-Palmolive, supra- y en
casos federales que cita por su valor persuasivo.  Los
casos citados, sin embargo, son distinguibles del de
autos, puesto que en ellos se buscaba protección en
Puerto Rico o Estados Unidos para una marca utilizada en
un país foráneo, como Venezuela, Francia o Italia.
Además, el argumento de Arribas ignora la aplicabilidad
de la Ley Lanahm a Puerto Rico.

que AHP viene usando Sonata en todo el territorio al que le aplica la Ley Lanham —en el que se incluye a Puerto Rico— desde la fecha en que se solicitó su registro. *Véanse*, 15 U.S.C.A. §1057 (c) y 1072, *supra*.

Mientras tanto, Arribas solicitó el registro de la marca Sonata en el Departamento de Estado en mayo de 1998. Cuando se le concedió, por operación de ley se retrotrajeron los efectos de la inscripción a la fecha de su solicitud. *Véase*, 10 LPRA sec. 171e. Ante las disposiciones de la nueva Ley de Marcas, Arribas pudo obtener el registro de una marca que no había utilizado y, mediante dicho registro, apropiarse de ella en el mercado de Puerto Rico.

A pesar de la tensión latente entre esos dos registros conflictivos, la controversia surge cuando coinciden en un mismo mercado, es decir, cuando AHP comienza a utilizar Sonata en Puerto Rico.[7] Luego de ello, AHP solicitó la cancelación del registro de Sonata a favor de Arribas en el Departamento de Estado.

A la luz del derecho antes expuesto, determinamos que la verdadera propietaria de la marca Sonata es AHP. Como se expresara anteriormente, al amparo de la

---

[7] En la esfera federal se ha interpretado que aún cuando un registrante federal tenga un derecho superior al de otro usuario sobre una misma marca, la reclamación del primero no madura hasta que efectivamente comience a usar la marca en el territorio en que la utiliza el segundo. *Véanse*, Dawn Donut Co. v. Hart's Food Stores, 267 F. 2d (Cir. 2, 1959) y 4 McCarthy, *supra*, § 26:33 y § 26:39.

disposición de la Ley Lanham sobre uso constructivo, debe entenderse que AHP ha usado la marca en Puerto Rico y en los Estados Unidos desde febrero de 1997. De otra parte, en el momento en que se registró la marca Sonata, se dio aviso constructivo a todos los otros posibles usuarios de que dicha marca ya había sido apropiada por el registrante federal. *Véase*, 15 U.S.C.A. § 1072, *supra*.

En vista de que los beneficios antes expuestos se desprenden del registro federal de una marca, quien se ve afectado por ellos deberá probar alguna de las defensas disponibles -notablemente, que es usuario previo de la marca- o deberá atacar la validez misma del registro. Para ello, sin embargo, deberá soportar el peso de la prueba, pues el registro federal de una marca constituye evidencia prima facie de que éste es válido, que el registrante es el dueño de la marca y que tiene el derecho exclusivo a usarla en el comercio. *Véase*, 15 U.S.C.A. § 1115(a), *supra*.

En este caso AHP presentó como prueba ante el Departamento de Estado su registro federal de la marca Sonata. Ante esa prueba, que no fue atacada de forma alguna, la agencia administrativa determinó, como cuestión de hecho, que AHP en efecto poseía un registro federal para la marca Sonata, que dicho registro había sido solicitado en febrero de 1997 y concedido en junio de 1998. De esa determinación se desprendían naturalmente las conclusiones de derecho recién

expuestas: que para efectos legales AHP ha usado la marca Sonata en el comercio de Estados Unidos y Puerto Rico desde febrero de 1997 y que a partir de junio de 1998 cualquier usuario posterior de la marca está notificado que su uso infringe el derecho del registrante federal.

Nos resta por determinar, únicamente, si ante la presencia de un usuario anterior[8] que es dueño de un registro federal de una marca, debe cancelarse el registro de la misma marca en el Departamento de Estado que obra a favor de una entidad diferente al registrante federal y que jamás ha utilizado la misma. La conclusión forzosa es que una vez el registrante federal en efecto comienza a usar la marca en Puerto Rico, ante las circunstancias antes descritas, procede la cancelación.

Resulta claro que por operación de la Ley Lanham, debe entenderse que AHP comenzó a usar la marca antes que Arribas efectuara el registro de Sonata en el Departamento de Estado. De ahí que proceda la cancelación tanto bajo el Art. 3 de nuestra Ley de Marcas -que faculta al usuario anterior de una marca registrada por otro a solicitar la cancelación de dicho registro dentro de los cinco años de efectuado- como del Art. 19 -que permite la cancelación del registro cuando éste se efectúa contrario a las disposiciones de la ley, entre las cuales se encuentra una prohibición de registrar una

---

[8] En virtud del uso constructivo que confiere la Ley Lanham.

marca que pertenezca a otro.  *Véanse*, 10 LPRA sec. 171a y sec. 171q.

En vista de lo anterior, fue correcta la determinación del Tribunal de Apelaciones de confirmar la decisión del Departamento de Estado de cancelar el registro de la marca Sonata a favor de Arribas.  Aun cuando el Departamento de Estado erró al concluir que en Puerto Rico no es posible apropiarse de una marca en virtud de un registro válido y a pesar que ambos foros obviaron discutir la relación y prioridad entre los derechos de las partes, la solución a la que llegaron fue correcta.  Procede, por tanto, su confirmación.

IV.

Por los fundamentos antes expuestos, se confirma el dictamen del Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

FEDERICO HERNÁNDEZ DENTON
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Arribas & Associates, Inc.

    Peticionaria

    v.                    CC-2003-939      Certiorari

American Home Products Corp.

    Recurrido


SENTENCIA

San Juan, Puerto Rico, a 14 de septiembre de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma el dictamen del Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo