ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| GENERA, L3C<br><br>Apelante<br><br>v.<br><br>GENERA PR, LLC<br><br>Apelada | KLAN202300923 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV04533<br><br>Sobre: Violación de Derechos de Marca, Interdicto Preliminar; Interdicto Permanente; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 8 de abril de 2024.

GenEra, L3C (en adelante GenEra L3C o Apelante), nos solicita que revoquemos la Sentencia que emitió el Tribunal de Primera Instancia, Sala de San Juan, el 15 de septiembre de 2023. Mediante esta, el foro primario desestimó la demanda de *injunction* preliminar y la totalidad de las reclamaciones contenidas en la demanda presentada por GenEra L3C.

Por los fundamentos que exponemos, confirmamos la Sentencia apelada.

## I.

Según surge del expediente, GenEra L3C es una compañía de responsabilidad limitada dedicada a la venta e instalación de sistemas de placas fotovoltaicas. La clientela de la Apelante se compone de entidades comerciales y sin fines de lucro a través de

todo Puerto Rico. Genera PR, LLC (en adelante Genera PR o Apelada) es una compañía de responsabilidad limitada creada exclusivamente para actuar como agente o representante del Gobierno de Puerto Rico, dedicada a la administración del sistema de generación de energía para Puerto Rico. De manera que, el único cliente de Genera PR es Gobierno de Puerto Rico.

El 16 de mayo de 2023, GenEra L3C incoó una causa de acción contra Genera PR por violación de derechos marcarios, interdicto preliminar y permanente, y una causa de acción por daños y perjuicios.[1] En síntesis, la Apelante alegó que en marzo de 2020 adquirió el derecho exclusivo al uso de sus marcas "Genera" y "Genera PR" en su negocio de servicios y productos de generación y almacenaje de energía mediante sistemas fotovoltaicos. Sostuvo que invirtió dinero, tiempo y esfuerzo para publicitar y comercializar con éxito su marca, colocándose como una de las marcas más reconocidas en el mercado de energía solar en la isla. Indicó que sus servicios fueron aprobados por diversas agencias federales y estatales, permitiéndole incursionar en segmentos del mercado. En adición a esto, la Apelante también alegó ser la dueña del *domain* Generapr.com.

Se alegó que el 25 de enero de 2023, Genera PR comenzó a usar las marcas "Genera" y "Genera PR" para distinguir servicios de generación de energía (power) en el comercio. Esto es, tres años después de que la Apelante incursionara al mercado. GenEra L3C alegó que el uso del logo de la Apelada es similar al suyo, así como el nombre de "Genera" y "Genera PR". Destacó que la imagen pública de Genera PR **obra en perjuicio** de la imagen y de los servicios de la parte Apelante y, por ende, en el desarrollo

---

[1] Véase, *Demanda*, Apéndice 80, pág. 972.

de sus marcas y la plusvalía de estas. Esto debido al parecido de las marcas y de los servicios afecta la percepción del consumidor y ocasiona **probabilidad de confusión** en cuanto al origen, afiliación y/o conexión de las marcas y/o de los servicios que ofrecen y comercializan las partes. Afirmó que este daño es irreparable, si no se detiene mediante la concesión del remedio de injunction.

Tras varios trámites procesales de descubrimiento de pruebas, el 26 de mayo de 2023, Genera PR presentó una Solicitud de Desestimación Bajo la Regla 10.2 (5) de Procedimiento Civil y en Oposición a Solicitud de "Injunction" Preliminar. Arguyó que GenEra L3C no tenía forma alguna de obtener un remedio porque no alegó, ni logró demostrar, que "Genera" y "Genera PR" sean marcas sujetas a la protección de la Ley de Marcas. Esto debido a que tanto "Genera" como "Genera PR" son términos descriptivos y/o genéricos. En adición a esto, alegó que la Apelante no alegó, ni logró demostrar que su esfuerzo creó una "significación secundaria" relacionada a la marca "Genera" y "Genera PR". Finalmente, sostuvo que GenEra L3C alegó de manera infundada y concluyente que el uso de "Genera" y "Genera PR" por parte de la apelada tenía la probabilidad de causar confusión en los consumidores.

El 30 de enero de 2023, el foro de instancia emitió una Orden en la cual determinó dejar en suspenso la determinación sobre la moción de Genera PR hasta tanto hubiese concluido el desfile de la prueba.

El 31 de mayo inició la vista en su fondo, con la presencia de las partes, representadas por sus abogados. Surge de la minuta transcrita el 5 de junio de 2023 lo siguiente:

A preguntas del Tribunal, el licenciado Cruz Pérez [abogado de Genera PR] expresa como un asunto de umbral, que procede que el tribunal elimine al testigo perito anunciado por la parte demandante, ya que la vista de hoy es para analizar si procede o no la solicitud de interdicto preliminar. Para eso, lo único que debe demostrar la parte demandante es que existe una prueba de confusión que le causa un daño irreparable. Entiende que en está vista el tribunal no tomará ninguna determinación sobre cuantías o sobre los alegados daños sufridos por la parte demandante.

El Tribunal manifiesta que en este caso hay varias causas de acción. Expresa que todo lo relacionado a la causa de acción en daños y perjuicio como al interdicto permanente será referido a la sala de procesos ordinarios. Hace constar que una vez determine si procede o no la solicitud de interdicto preliminar, ordenará la reasignación del caso a una sala civil para que atienda las otras causas de acción. Informa que no atenderá nada relacionado a los daños, *solo escuchará la prueba con base suficiente para establecer los requisitos que dispone la Ley de Marcas y su jurisprudencia interpretativa*.[2]

La vista continuó los días 17 y 18 de agosto de 2023. Por la parte demandante testificó el Sr. Saul González Mendoza y el Sr. Héctor Carrasquillo Collazo. Luego de culminar la presentación de la prueba de la parte demandante, la parte demandada argumentó la moción de *non suit*. En apretada síntesis, expuso que no hubo prueba sobre los daños irreparables, además de que no existe probabilidad de confusión pues las partes no participan del mismo mercado.[3] El 21 de agosto de 2023 ambas partes presentaron sus correspondientes memorandos de derecho.

Evaluada la prueba, el 13 de septiembre de 2023, el foro primario desestimó la acción en su totalidad y plasmó los siguientes hechos en la Sentencia:

1. El Sr. Saúl González Mendoza es ingeniero de profesión y fundador de la empresa GenEra L3C en el año 2020.

2. GenEra L3C, cuyo número de registro ante el Departamento de Estado es el 442382, es una Compañía de Responsabilidad Limitada con fin social

---

[2] Minuta, apéndice pág. 262. Énfasis suplido.
[3] Sentencia, apéndice pág. 2.

doméstica con fines de lucro, organizada el 25 de marzo de 2020.

3. Se dedica a la instalación de sistemas fotovoltaicos.

4. Los clientes de GenEra L3C son entidades comerciales y sin fines de lucro ubicados a través de toda la Isla de Puerto Rico.

5. GenEra L3C cualificó como compañía instaladora por haber cumplido con los requisitos de los fondos federales CDBG, bajo el Programa Nueva Energía.

6. El 4 de marzo de 2023, el Sr. Saúl González recibió un correo a través de la dirección saul@generapr.com en el que el Sr. Ángel Zayas lo saluda y entre otros asuntos ajenos al caso, le indica: "Veo que te moviste a Genera? Que bien. Me cuentas aparte…". Ese mismo día, el Sr. González le respondió aclarando la situación.

7. El 1 de mayo de 2023, el Sr. Saúl González recibió un correo a través de la dirección saul@generapr.com en el que la Sra. Kamilah Santiago Bobet lo saluda y le pregunta si su compañía GenEra L3C está relacionada con Genera PR.

8. La Sra. Kamilah Santiago le compró y adquirió los servicios de GenEra L3C para la instalación de las placas fotovoltaicas.

9. El 26 de enero de 2023, el Sr. Saúl González recibió un mensaje a través de su celular, del Sr. Christian Bonilla en el que lo saluda y le pregunta si su compañía es la que obtuvo el contrato de la distribución de energía eléctrica.

10. Durante el año 2022, el bróker Rubén Hinojo de GoDaddy.com, le manifestó que alguien estaba interesado en comprar el nombre de dominio GeneraPr.com.

11. A la fecha de la presentación de la demandada no se había presentado ante el Departamento de Estado, ni oficina federal, el registro como una marca del nombre GenEra L3C.

12. GenEra L3C no tiene presencia en las redes sociales como LinkedIn, Instagram, TikTok ni Twitter o X. En la plataforma de Facebook, no hubo publicaciones entre el 12 de junio de 2022 y 27 de marzo de 2023. El sitio web en internet se hizo accesible luego de la presentación de la demanda.

13. GenEra L3C solo tiene una oficina localizada en el pueblo de Caguas.

14. GenEra L3C no tiene contratos con el Gobierno de Puerto Rico.

15. GenEra L3C no provee servicios de administración de sistemas y plantas eléctricas de la Autoridad de Energía Eléctrica, ni se dedica a la generación de energía eléctrica.

16. Genera PR, LLC no es parte del programa Nueva Vivienda del DDEC ni Nueva Energía de CDBG-MIT.

17. GenEra L3C participó de ferias de empleo para reclutar empleados.

18. Genera PR, LLC no ha estado presente en las actividades de ferias de empleo en las que ha participado la demandante ni han concurrido en ninguna de las charlas que la demandante ha asistido.

19. Desde sus comienzos, GenEra L3C ha tenido 3 logos distintos (GenEra), los cuales han ido variando a través del tiempo. Estos logos incluyen la consigna "El Sol Sale Para Todos".

20. El Sr. Héctor L Carrasquillo Collazo, perito de la demandante, estudió en la Universidad de Puerto Rico, recinto de Humacao y completó sus estudios en el 1994 con licencia de Contador Público Autorizado, lic. #3516.

21. Ha actuado como perito en foros administrativos y judiciales en casos de divorcio o herencias donde hay negocios de por medio. Ha testificado únicamente en 3 casos.

22. No ha rendido un informe pericial para el caso de autos.

23. La fuente de información que utilizó para emitir la opinión pericial es la demanda y la moción de desestimación.

24. No evaluó algún estudio de mercadeo ni encuesta de consumidores de la demandante, ni consideró algún reporte o nota periodística.

25. Asumió como ciertas las alegaciones de la demanda.

26. El perito expresó que, en un evento de conflictos de marca se afecta la plusvalía del negocio. Que una confusión con el nombre de una entidad tiene un impacto negativo en el valor de la empresa al igual que los resultados.

El foro primario evaluó el derecho relacionado a la Regla 39.2 (c) de Procedimiento Civil, 32 LPRA Ap. V, sobre la moción de desestimación *non suit*, así como la Ley de Marcas del Gobierno

de Puerto Rico y su jurisprudencia interpretativa. Tras ello, declaró *Ha Lugar* la moción al amparo de la Regla 39.2(c) de Procedimiento Civil presentada por Genera PR y en su efecto desestimó la demanda por no existir probabilidad de confusión y no demostrarse el daño irreparable.

En desacuerdo, el 16 de octubre de 2023, GenEra L3C presentó un recurso de apelación que nos ocupa y formuló los siguientes señalamientos de error:

> Erró el TPI al concluir que no desfiló prueba de daño, y que la prueba que desfiló sobre confusión real o actual, no probó daño irreparable porque solo estableció una confusión temporera en el público, que quedó resuelta con una simple explicación del presidente de la parte apelante.

> Erró el TPI al concluir que no empecé el parecido de las marcas y logotipos, no existe probabilidad de confusión porque los servicios que ambas partes prestan son distintos a pesar de estar en la misma industria.

> Erró el TPI en su apreciación de la prueba al determinar que la marca Genera no es susceptible de apropiación por ser descriptiva, en lugar de sugestiva.

> Erró el TPI al interpretar y aplicar a los hechos admitidos y probados del caso el derecho vigente sobre el requisito de daño irreparable en el derecho marcario al considerar un interdicto preliminar, por lo que determinó incorrectamente en derecho que no se probó este requisito del interdicto preliminar.

> Erró el TPI y abusó de su discreción al aplicar de manera incorrecta el derecho vigente en la atención a una moción de desestimación a los hechos del caso y por consiguiente desestimar la totalidad de las causas de acción presentadas por la parte Apelante, y no permitirle a esa parte la continuación de sus causas de acción, violando su derecho a presentar adecuadamente su reclamación.

Recibido el recurso, le concedimos término a Genera PR para que presentara su posición a este. Con el beneficio de las comparecencias de ambas partes, disponemos.

## II.

### A. Ley de Marcas de Puerto Rico

En nuestra jurisdicción, el estatuto rector del derecho marcario es la Ley de Marcas del Gobierno de Puerto Rico, Ley Núm. 169 de 16 de diciembre de 2009, 10 LPRA sec. 223 *et seq*. (en adelante Ley 169-2009). En esencia, el derecho marcario "procura evitar la confusión entre el público consumidor sobre el origen del producto o servicio que la marca identifica al promulgar la correcta identificación de la fuente de éstos". Bedrosian Heres v. Nestlé Purina Petcare, 205 DPR 1117, 1130 (2020). De igual forma, pretende resguardar la reputación, plusvalía, así como la calidad que la marca haya desarrollado. *Íd*., citando a Arribas v. American Home, 165 DPR 598, 605 (2005); Park 'N Fly, Inc. Collar Park and Fly, Inc., 469 US 189, 198 (1985).

El Artículo 2 de la Ley 169 define marca como "[t]odo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, al igual que de productos o servicios de otra persona. El término incluye cualquier marca de fábrica, marca de servicio, marca de certificación y marca colectiva". 10 LPRA sec. 223 (f). Como vemos, una marca "constituye todo elemento distintivo que permita diferenciar un producto o servicio de otros en el mercado". Bedrosian Heres v. Nestlé Purina Petcare, *supra*, pág. 1130.

Ahora bien, la Ley 169-2009 enumera los supuestos por los cuales no se podrá registrar ni proteger una marca. El Artículo 5 dispone que no se registraran aquellas marcas que consistan en:

> […]
> 4. Palabras descriptivas de los bienes o servicios en los cuales se usa, a menos que hayan adquirido significación secundaria.
> […]
> 8. Una marca que sea igual o similar y que pueda causar probabilidad de confusión en cuanto al origen

de los bienes o servicios con otra marca registrada o que se esté utilizando en el Comercio en Puerto Rico por otra persona y que se use o usará en bienes o servicios iguales o similares a los de la marca registrada o previamente utilizada en el Comercio de Puerto Rico. 10 LPRA sec. 223 (c).

El Tribunal Supremo ha identificado cuatro tipos de marcas; a saber: (1) *genéricas*, (2) *descriptivas*, (3) *sugestivas*, (4) *arbitrarias* o *imaginables*. Bedrosian Heres v. Nestlé Purina Petcare, *supra*, pág. 1132, citando Federation des Ind. v. Ebel, 172 DPR 615, 624 (2007); Posadas de PR v. Sands Hotel, 131 DPR 21, 37 (1992). Las marcas sugestivas, arbitrarias o imaginables están protegidas bajo el derecho marcario porque gozan de una distinción inherente que suele identificar con facilidad la procedencia del producto o servicio. *Íd*., citando a Posadas de PR v. Sands Hotel, 131 DPR en las págs. 37-39; véase Two Pesos, Inc. v. Taco Cabana, Inc., 505 US 763 (1992). Por otro lado, las marcas descriptivas son aquellas que solo "imparten información al público consumidor sobre algún ingrediente o característica del artículo o servicio". *Íd*., pág. 1133. Las marcas genéricas son aquellas que se reconocen como el nombre común de una clase o género, y no de un producto, servicio o productor de una fuente específica. *Íd*., pág. 1134.

Si bien es cierto que las marcas *genéricas* y *descriptivas* están incluidas en la Ley 169-2009 como marcas no registrables, es importante resaltar las *marcas descriptivas* pueden registrarse y protegerse, siempre y cuando hayan alcanzado significación secundaria. *Íd*., pág. 1132. No obstante, dicha excepción no está disponible para las *marcas genéricas*, sin importar el significado secundario que tengan. Posadas de PR v. Sands Hotel, *supra*, pág. 39. La Ley 169-2009 define la significación secundaria como:

[E]l carácter distintivo o nuevo significado que adquiere una marca originalmente no distintiva

cuando el consumidor asocia la marca con los bienes o servicios de una fuente en particular, aunque no sea conocida, como consecuencia del uso de la marca en el comercio.

El Secretario podrá aceptar como evidencia que la marca ha adquirido significación secundaria para los bienes o servicios en cuestión, prueba de uso continuo de la marca en el comercio por cinco (5) años con anterioridad a la fecha en la cual se hace la alegación de que la marca ha adquirido significación secundaria. 10 LPRA sec. 223 (p).

La significación secundaria se evalúa desde la impresión y percepción del consumidor. Entiéndase, una marca descriptiva adquiere carácter distintivo cuando el consumidor asocia la marca con el productor u origen del producto. Bedrosian Heres v. Nestlé Purina Petcare, *supra*, págs. 1133-1134. Cuando los tribunales se encuentren en posición de calificar una marca como descriptiva o genérica, estos deben evaluar los siguientes factores: (1) uso genérico del término por los competidores sin que dicho uso haya sido impugnado, así como el uso genérico de la marca por parte del dueño de ésta; (2) la definición del término en el diccionario, lo que constituye un elemento relevante, aunque no dispositivo; (3) el uso genérico del término en revistas o periódicos especializados; (4) el testimonio de personas en el mercado, y (5) encuestas a los consumidores. *Íd*., pág. 1136; citando 87 CJS Trademarks, Trades Names, and Unfair Competition Sec. 52 (2020).

Evaluados en conjunto, todos estos factores pueden incidir sobre el nivel de protección jurídica al que pueden aspirar las marcas. *Íd*., pág. 1136.

### B. Interdicto Preliminar y Permanente

La Ley 169-2009 provee una causa de acción contra aquellos que infrinjan el derecho de uso exclusivo de una persona sobre una marca. Sobre este particular, la ley dispone:

Cualquier persona que, sin el consentimiento del titular registral o del dueño de una marca, reproduzca, falsifique, copie, imite, use o intente usar una marca igual o similar a una marca registrada bajo esta Ley, o que se usa en el Comercio de Puerto Rico con anterioridad al uso por parte de tal persona, que pueda causar probabilidad de confusión o engaño en cuanto al origen de los bienes o servicios o en cuanto a endoso o asociación, será responsable en una acción civil al titular registral, o al dueño, y/o a la persona con autorización por escrito de parte del dueño de la marca, y cualquiera de los cuales podrá presentar una demanda contra tal persona y solicitar un interdicto, orden de incautación, daños y/o cualquier otro remedio que en derecho proceda. 10 LPRA sec. 223w.

Como principio medular en nuestra jurisdicción, las causas de acción por violación a una marca necesitan de evidencia que demuestra la probabilidad y no la mera posibilidad de confusión en el consumidor. Posadas de PR v. Sands Hotel, *supra*, pág. 44. De manera que, el dueño de una marca no puede impedir que otros utilicen una marca similar si ésta última no crea una probabilidad de confusión al consumidor. *Íd*., pág. 36. La confusión entre dos marcas se determina con el criterio o *test* del comprador prudente y razonable. Esto es, "cuando un comprador prudente y razonable puede comprar un producto bajo la creencia que está comprando otro producto, existe la probabilidad de confusión". *Íd*., pág. 43.

Como corolario de lo anterior, para prevalecer en una solicitud de interdicto por una infracción de marca, la parte que reclama debe demostrar: (1) que el nombre sobre el cual desea la exclusividad sobre determinado producto o servicio es protegible o está sujeto a ser apropiado; (2) que fue quien primero lo utilizó en conexión con su producto o servicio en este foro, Puerto Rico; (3) que existe una probabilidad de confusión al consumidor entre su marca y la del demandado; y (4) […] que dicha probabilidad de confusión le causa un daño irreparable para el cual no posee otro remedio adecuado en ley. *Íd.* pág. 37.

Para determinar si existe una probabilidad de confusión entre marcas, es preciso evaluar las circunstancias de cada caso. Bedrosian Heres v. Nestlé Purina Petcare, *supra*, pág. 1137. Los casos se deben evaluar a la luz de los siguientes criterios: (1) la similitud entre las marcas; (2) la similitud de los productos o servicios; (3) la fuerza de la marca o su distintivo; (4) la intención del segundo usuario al adoptar la marca; y (5) evidencia de confusión actual o real. Posadas de PR v. Sands Hotel, *supra*, pág. 45.

Sobre el primer criterio, el Tribunal Supremo ha indicado que la similitud entre las marcas es necesaria para establecer la probabilidad de confusión. *Íd*., pág. 47. No empecé a lo anterior, el foro supremo también ha señalado que la similitud entre las marcas, por sí sola, no crea la probabilidad de confusión. *Íd*. El grado de similitud entre las marcas se determina comparando ambas marcas en su totalidad. *Íd*., citando a Cooperativa Cafeteros v. Colón Colón, 91 DPR 372, 395 (1964). Estas no tienen que ser idénticas, ya que basta con demostrar que se copió o imitó la parte sustancial o dominante de la marca. *Íd*.

En cuanto al segundo criterio, es norma establecida que "mientras más cercana sea la similitud entre dos productos o servicios, más probabilidad existe de que se cree confusión". *Íd*., pág. 48. Es necesario tener en cuenta, no solo la similitud de los servicios, sino también la proximidad del mercado y territorio al que van dirigidos. Cabe resaltar, que el servicio o el mercado deben ser lo suficientemente similares como para hacerle creer a los consumidores que existe un origen o afiliación en común. *Íd*. De manera que, no es necesario que el servicio ni el mercado sean idénticos.

La fuerza o debilidad de las marcas es de vital importancia para la determinación de confusión entre dos marcas. Como explica el Tribunal Supremo:

> La "fuerza" de una marca depende de su distintivo o la tendencia de identificar los servicios ofrecidos bajo una marca como pertenecientes a, o provenientes de, una fuente en particular. Por lo tanto, la evidencia de que la marca es extensamente utilizada por terceros en la misma industria es altamente relevante para demostrar la "debilidad" de una marca o su falta de distintivo.
> La "la fuerza o debilidad" de una marca determina el grado de protección a brindarse a la marca sobre otras similares. La marca "fuerte" tiene una mayor esfera de protección mientras que la protección de una marca "débil" estará limitada a evitar que productos o servicios *estrechamente* relacionados utilicen marcas similares. Existe probabilidad de confusión entre dos marcas, aunque sean "débiles", si sus nombres y productos o servicios son iguales. *Íd*., págs. 45-46. Citas omitidas.

Por otro lado, la intención del segundo usuario se refiere a la adopción de una marca con el fin de beneficiarse con la reputación del competidor mediando el engaño de los consumidores. Aun cuando lo anterior sea un elemento significativo para establecer la probabilidad de confusión, pierde importancia ante hechos adicionales que demuestren la falta de confusión.

El criterio por evaluar para determinar si existe la probabilidad de confusión entre dos marcas es el siguiente: si un comprador prudente y razonable compra un producto bajo la creencia de que está comprando otro. *Posadas de P.R. v. Sands Hotel*, supra, pág. 43. El estándar para determinar la confusión es la probabilidad, ya que "[u]na mera posibilidad de confusión no es suficiente para emitir [un] injunction". Id., pág. 44. A pesar de que no existe una norma precisa para determinar la existencia de una probabilidad de confusión, se deben considerar los siguientes criterios: (1) la similaridad entre las marcas, (2) la

similaridad de los productos o servicios, (3) la fuerza de la marca o su distintivo, (4) la intención del segundo usuario al adoptar la marca de servicio, y (5) evidencia de confusión actual o real. *Id*., pág. 45.

### C. Moción de Desestimación

El inciso (c) de la Regla 39.2 de Procedimiento Civil, *supra*, regula las mociones conocidas como moción contra la prueba o *non-suit*. En lo pertinente, provee:

> (c) Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. 32 LPRA Ap. V, 39.2.

Cuando, luego de presentada la prueba de la parte demandante, se presenta una moción de esta naturaleza el tribunal está autorizado en esa etapa a aquilatar la prueba presentada y a formular su apreciación de los hechos, según la credibilidad que le haya merecido. Romero Arroyo, *et al*. v. ELA, 139 DPR 576, 579 (1995). Dada su naturaleza, los tribunales deben ejercer esta facultad después de un escrutinio sereno y cuidadoso de la prueba. Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 915 (2011); citando a Romero Arroyo, *et al*. v. ELA. Si luego de presentada la prueba queda duda, el tribunal debe requerirle a la parte demandada que presente su caso. Roselló Cruz v. García, 116 DPR 511, 520 (1985).

Es harto conocido en nuestra jurisdicción que, en ausencia de pasión, perjuicio, parcialidad o error manifiesto, los tribunales apelativos no pueden intervenir en la apreciación que hagan los foros de instancia sobre la prueba. Rivera Figueroa v. The Fuller Brush Co., *supra*, pág. 916; citando a Monllor v. Soc. de Gananciales, 138 DPR 600, 610 (1995). Esto no significa que las determinaciones de los foros primario gocen de inmunidad ante la función revisora de los tribunales apelativos. Méndez v. Morales, 142 DPR 26, 36 (1996). Los tribunales deben atender las mociones al amparo de la Regla 39.2 (c) con cautela, puesto que conlleva el final de la reclamación de la parte demandante y, por consiguiente, de su día en corte. Rivera Figueroa v. The Fuller Brush Co., *supra*.

### III.

A la luz de los factores discutidos, procede la confirmación de la sentencia apelada, pues la prueba presentada por la Apelante no demostró probabilidad de confusión real sobre los servicios de las partes, tampoco demostró que hubiese sufrido un daño irreparable o que la marca fuese sugestiva. GenEra L3C no cumplió con los requisitos dispuestos en la Ley 169-2009 para la concesión de un interdicto preliminar. Tampoco demostró causa de acción alguna.

Primeramente, el nombre "Genera" no es protegible. El foro primario calificó la palabra "Genera" como descriptiva. Recordemos que las palabras descriptivas no están protegidas ya que identifican características o cualidades de un producto o servicio. De igual forma, debemos recordar que aun cuando una marca sea descriptiva, puede protegerse si alcanza la significación secundaria. Según indicáramos con anterioridad, la significación secundaria se logra cuando los consumidores asocian una marca

con un producto o servicio particular. Examinados los requisitos para la significación secundaria, GenEra L3C no cumple con estos. La palabra "Genera" es descriptiva puesto que describe la característica principal del sistema de placas fotovoltaicas, la generación de electricidad. Nos vemos forzados a coincidir con el foro de instancia en cuanto a la ausencia de prueba sobre el uso genérico del término en revistas o periódicos especializados, testimonios de personas en el mercado, ni encuestas a los consumidores. Por lo tanto, no se cumple con este requisito.

En segundo lugar, sería un desacierto total no reconocer que GenEra L3C utilizó la marca "Genera" primero que Genera PR. Recordemos que la Apelante se incorporó en el año 2020, mientras que la Apelada apenas comenzó a utilizar en el año 2023. De manera que, GenEra L3C cumple con el segundo requisito.

Sobre la probabilidad de confusión de los consumidores entre las marcas, no cabe duda de que se cumple el primer requisito: similitud entre las marcas. Tanto la Apelante como la Apelada utilizan la palabra "Genera" como sus marcas. De igual forma, los logotipos de ambas partes son similares en cuanto a sus diseños y colores. No cabe duda de que, en efecto, existe similitud entre las marcas. No obstante, no consideramos que exista similitud de los productos o servicios. GenEra L3C se dedica a la venta e instalación de sistemas de placas fotovoltaicas. Recordemos que la clientela de la Apelante se compone de entidades comerciales y sin fines de lucro. Mientras que Genera PR se creó específicamente para actuar como agente del Gobierno de Puerto Rico, quien es su *único* cliente.

En cuanto al tercer criterio sobre la fuerza de la marca o su distintivo, no creemos que GenEra L3C haya presentado evidencia que sustente la fuerza de la marca. La palabra "genera" no es una

palabra inventada y mucho menos ajena a nuestro idioma. Se trata de una palabra común, lo cual debilita a la marca. Como bien señaláramos, la palabra "genera" hace que la marca sea una descriptiva que debilita la marca. Ante este cuadro, tampoco se cumple con el requisito de fuerza.

De los hechos y documentos provistos a este tribunal, no surge que Genera PR haya adoptado la marca con la intención de causar daño. Tampoco surge que Genera PR haya tenido la intención de aprovecharse de o beneficiarse de la reputación de GenEra L3C. De manera que, la Apelante no cumple con este requisito.

En cuanto al requisito de evidencia sobre confusión actual o real, somos del criterio de que tampoco se cumple con este requisito. Solo se presentaron unas breves instancias en las que GenEra L3C logró aclarar la situación. Inclusive, en una de las instancias, no solo logró aclarar la duda de la Sra. Kamilah Santiago, sino que concretó una venta con ésta. Ciertamente, la Sra. Kamilah Santiago adquirió los productos de GenEra L3C sabiendo que contrataba con la Apelante y no con la Apelada. No creemos que se haya cumplido con el requisito de confusión actual o real. De manera que, no se cumplió con el criterio de probabilidad de confusión.

Finalmente, no se ha demostrado que existe un daño irreparable a causa de la probabilidad de confusión. En primer lugar, ya señalamos que no existe la probabilidad de confusión. GenEra L3C alega que la percepción del público sobre Genera PR afecta su marca debido a que existe cierta animosidad por parte de los consumidores hacia la Apelada. Sin embargo, el tribunal no ha tenido ante sí prueba que demuestre tal aseveración. Así las cosas, el planteamiento resulta ser uno altamente especulativo.

Un tribunal no puede conceder un interdicto, ya sea preliminar o permanente, a base de especulaciones. No se cumplió con el cuarto y último criterio.

Examinadas las marcas en su totalidad, la diferencia en los quehaceres de GenEra L3C y Genera PR proveen distinciones palpables al público consumidor. Por otro lado, quien utiliza una marca "débil" asume el riesgo de que ocurra alguna confusión. KP Permanent Make-up, Inc. v. Lasting Impression I, Inc., 543 US 111 (2004). Ante ello, procede confirmar la Sentencia que aquí evaluamos.

## IV.

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones